Daniel C. Girard (State Bar No. 114826)
Elizabeth A. Kramer (State Bar No. 293129)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846
dgirard@girardsharp.com
ekramer@girardsharp.com

Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
amz@classlawgroup.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.B. and C.D., on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br>   v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; JAMES MASON HEAPS, M.D.; and JOHN DOES 1-20,<br><br>            Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs A.B. and C.D., individually and on behalf of a class of women who were examined by James Mason Heaps, M.D. at the University of California, Los Angeles (UCLA), allege as follows.

## NATURE OF THE CASE

1.     Dr. James Heaps, an obstetrician-gynecologist (OB-GYN) specializing in oncology, saw patients at UCLA medical facilities between 1983 and 2018.  He was arrested in June 2019 and indicted on two counts of sexual battery and one count of sexual exploitation by a physician.

2.     Plaintiffs are two of the many women who visited Heaps for sensitive women's health treatment at UCLA.  Heaps caused lasting damage to them and his other patients by sexually assaulting them and making lewd statements while conducting medical examinations.

3.     UCLA breached its duties to Plaintiffs and other women by keeping Heaps on staff despite receiving several complaints about his behavior.  UCLA did not terminate or suspend Heaps during or after its investigation of those complaints, or after the Medical Board of California opened its own investigation into Heaps's conduct in 2014.  UCLA nurses and medical assistants also attended Heaps's examinations and observed his predatory behavior, but did nothing to stop it.

4.     More than 50 women have now come forward to report inappropriate sexual contact by Heaps, and UCLA has paid over $3 million in individual settlements relating to Heaps's misconduct.  In June 2018, without disclosing the results of its investigation—which found Heaps violated university policy on sexual violence—UCLA allowed Heaps to quietly resign.  Only after Heaps's arrest did UCLA issue a statement that it was "deeply sorry" that its women's health doctor violated "the trust of his patients."

5.     Plaintiffs bring this action to obtain relief for themselves and other women who saw Heaps for treatment.

CLASS ACTION COMPLAINT
CASE NO.

## JURISDICTION AND VENUE

6.     The Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claim under Title IX of the federal civil rights laws.  Additionally, under 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiffs' remaining claims, which arise under California law.  The Court also has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendants, Plaintiff A.B., and members of the class are domiciled in different states.

7.     The Court has personal jurisdiction over the Regents of the University of California (the "UC Regents") because Heaps examined Plaintiffs and other women who comprise the proposed class in California, and because the UC Regents have sufficient minimum contacts with California to render the exercise of jurisdiction by this Court proper and necessary.

8.     The Court has personal jurisdiction over Heaps by virtue of his citizenship of and residency in California.

9.     Venue is proper in this District under 28 U.S.C. § 1391.  A substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

10.     Plaintiff A.B. is a citizen and resident of Hawaii County, Hawaii.

11.     Plaintiff C.D. is a citizen and resident of Los Angeles County, California.

12.     Plaintiffs are using initials in this litigation to protect their privacy, and if required by the Court, will seek permission to proceed under pseudonyms.

13.     Defendant UC Regents is a California corporation headquartered in Alameda County, California.  The UC Regents serve as the governing board of the University of California and control its operations, including at UCLA.  The UC Regents are authorized to administer, and possess the exclusive authority to bind, UCLA Health,

CLASS ACTION COMPLAINT
CASE NO.

which includes UCLA Medical Centers, Children's Hospital, UCLA Health Clinics, UCLA Faculty Group, and the David Geffen School of Medicine at UCLA.

14.     Defendant James Mason Heaps, M.D. is a citizen and resident of Los Angeles County, California.  Heaps began working with UCLA Health, at the UCLA Student Health Center, in 1983, at which time he also possessed privileges at the Ronald Reagan UCLA Medical Center.

15.     Defendants John Does Nos. 1-20 are other persons or entities associated with Heaps and UCLA Health during the Class Period who engaged in or abetted the conduct set forth in this complaint.  Plaintiffs intend to seek leave to amend the complaint upon learning the identity of the John Doe Defendants.

## FACTUAL ALLEGATIONS

### A.    Heaps Assaulted Plaintiffs

#### 1.    A.B.

16.     In 2012, A.B. asked her primary care doctor at UCLA Health to recommend an OB/GYN.  Her doctor recommended that she visit Heaps.

17.     When Heaps first started seeing A.B., he told her that she should see him once every six months for a pap smear.  A.B. visited Heaps in 2012 and at least twice in 2013.

18.     In early 2014, A.B. had another OB/GYN appointment with Heaps for a regularly scheduled pap smear.  A nurse escorted her into an exam room and asked her to disrobe completely and put on a paper gown.  The nurse left the room and did not return.  No one else was present during A.B.'s visit.

19.     Heaps entered the exam room and said that he wanted to do a transvaginal ultrasound in addition to the pap smear.  A transvaginal ultrasound is a type of pelvic ultrasound used to examine female reproductive organs, and involves inserting an ultrasound probe two to three inches into the vaginal canal.

20.     After conducting the pap smear, Heaps began the transvaginal ultrasound. He aggressively inserted the ultrasound probe deep into A.B.'s vaginal canal.  He did not

3

rotate the probe or move it to different areas, but instead kept pushing it straight and deeper inside her body.

21.     Throughout the procedure, Heaps looked only at A.B.'s face and did not look at the monitor showing the sonogram images.

22.     A.B. told Heaps that she was in severe pain.  Heaps said that the pain was normal and "all women feel it."  He continued to probe her aggressively, causing prolonged, severe pain, for at least 15 minutes.  A.B. stayed silent for the remainder of the procedure.  Although she was in pain and disconcerted that Heaps was staring at her face, A.B. assumed that what he was doing was medically proper and necessary.

23.     After about 15 to 20 minutes, Heaps said he was done and that A.B. could get dressed.  Although she was asked to (and did) disrobe from the waist up, Heaps did not conduct a breast exam during the appointment.

24.     Heaps did not explain the results of the transvaginal ultrasound during the appointment.  Nor did A.B. ever hear from anyone at UCLA Health about the results.

25.     Years later, A.B. had the same procedure performed by a different doctor. She did not experience any pain, and the doctor was looking at the monitor throughout the procedure.  That doctor told her that a transvaginal ultrasound is only necessary for certain symptoms and medical conditions.  She did not have any of those symptoms or conditions when Heaps performed the procedure.

26.     In or around October 2014, A.B. saw Heaps for her next regularly scheduled pap smear.  A nurse escorted A.B. into an exam room and asked her to disrobe completely and put on a paper gown.  The nurse left the room and did not return.  No one else was present during this visit.

27.     Heaps came into the room and said he was going to do a breast exam and pap smear.

28.     A.B. expected Heaps to palpate specific areas of each breast, as she had experienced during breast exams with other medical professionals.  Instead, Heaps fondled, cupped, and jiggled her breasts in a sexual manner, as if for his own sexual

gratification or in an attempt to sexually stimulate her.  While he was fondling, cupping, and jiggling her breasts, Heaps stared at A.B.'s face and said nothing.

29.     A.B. was shocked and unable to speak or move while this was happening. Finally she turned her head toward Heaps and made eye contact.  At that point, Heaps pulled his hands away and said, "okay, we're going to do the pap smear now."

30.     After the pap smear, Heaps said he was done and that A.B. could get dressed.  He then left the room.  A.B. was still in shock when she left.  She felt violated but did her best to forget about what happened, resolving to find a different OB/GYN because she could not bear to see Heaps again.

31.     Her new doctor, who was also an employee of UCLA Health, told her that she did not need pap smears every six months (as Heaps had insisted), as once a year was enough.  A.B. saw the new doctor annually for a pap smear.  He never conducted or raised the possibility of her needing a transvaginal ultrasound.

32.     A.B. did not tell anyone about her experiences with Heaps because they were too painful to relive and because she felt embarrassed and ashamed.  She kept trying to convince herself that a UCLA doctor must have provided the highest standard of care and that, somehow, what happened was her fault.  A.B. tried to suppress her memories of her visits with Heaps—without success.

33.     A.B. feels deeply upset, demeaned, abused, and violated by Heaps.

34.     Heaps violated and injured A.B. by, among other things, (1) failing to advise and inform her of the procedures being performed, (2) aggressively probing her vaginal canal and causing her pain during an unnecessary transvaginal ultrasound, and (3) fondling, cupping, and jiggling her breasts in a sexual manner under the guise of giving a breast exam.

35.     Because Heaps was an employee of UCLA Health, A.B. reasonably believed that Heaps's conduct must have been legitimate medical treatment.

36.     In June 2019, A.B. received a letter from UCLA stating that Heaps was "charged with sexual battery and sexual exploitation in connection with his medical

CLASS ACTION COMPLAINT
CASE NO.

practice."  UCLA noted in the letter that the criminal charges against Heaps were "very disturbing."

37.     After reading this letter, A.B. realized for the first time that Heaps's actions at her appointments were sexual assaults.  This realization has caused her to experience severe psychological and emotional distress.  She also feels betrayed by and angry at UCLA for subjecting her and other women to Heaps's egregious behavior.

         **2.**     **C.D.**

38.     C.D. was referred to Heaps in or about early 2013.  Heaps was the first OB/GYN she saw since moving to the United States in 2010.

39.     Heaps told C.D. that she should come in once every three to six months for a pap smear.  C.D. therefore visited Heaps at three- to six-month intervals from her first appointment with him to her last appointment in June of 2018.

40.     In 2015, C.D. saw Heaps for a regularly scheduled pap smear.  A nurse escorted C.D. into an exam room and asked her to disrobe completely and put on a paper gown.  The nurse left the room and did not return.

41.     When Heaps entered the exam room, he was accompanied by a female chaperone who was present for the entirety of the visit.

42.     Heaps asked C.D. to position herself on the exam table to be closer to him.  She complied.  Heaps then began touching her legs and thighs without gloves on.  Still without gloves, Heaps touched her genital area, the opening of her vagina, and put his fingers inside her vagina.  He also inserted a speculum.  Heaps touched C.D. and used his fingers to penetrate her in a sexual manner, as if for his own gratification or in an attempt to sexually stimulate her.

43.     After inserting the speculum, Heaps put gloves on and took a swab of her cervix.

44.     Throughout this 2015 visit, Heaps asked questions and made comments to C.D. about her sexual activity, including whether she was dating anyone and how frequently she had sex.  These questions and comments were unsolicited, unrelated to

CLASS ACTION COMPLAINT
CASE NO.

any medical issues that C.D. and Heaps discussed over the course of his treatment of her, and embarrassed C.D.  Heaps's statements and conduct during this visit made C.D. feel extremely uncomfortable .

45.    When Heaps completed the pap smear, he told C.D. he was done and that she could get dressed.  Heaps and the female chaperone left the exam room at the same time.  Although she was asked to (and did) disrobe from the waist up, Heaps did not conduct a breast exam during the appointment.

46.    Heaps's behavior disturbed and confused C.D.  She assumed, however, that given UCLA Health's excellent reputation and the fact that a female chaperone was in the exam room, Heaps must have been conducting the procedure appropriately, and that she was misunderstanding or overreacting to his sexual comments and questions.

47.    C.D. came to the United States from England shortly before seeking treatment with Heaps.  So C.D. also attributed the experience to a cultural disconnect, thinking that Heaps's behavior, though disturbing and offensive to C.D, was acceptable in the United States.

48.    C.D. tried to convince herself that nothing improper had happened, and did her best to forget about the visit.

49.    In 2016, C.D. saw Heaps for her next regularly scheduled pap smear.  A nurse escorted C.D. into an exam room and asked her to disrobe completely and put on a paper gown.  The nurse left the room and did not return.

50.    When Heaps entered the exam room, he was accompanied by a female chaperone who was present for the entirety of the visit.

51.    Heaps said he needed to do an "internal exam" before putting in the speculum.  Heaps began touching C.D.'s legs and thighs, then touched her genital area, the opening of her vagina, and inserted his fingers.  While his fingers were inside of her, Heaps made sexual comments to C.D., including that she must "take good care" of herself because he could feel that her vagina was "very tight."  Heaps said that C.D.'s

CLASS ACTION COMPLAINT
CASE NO.

vagina was so tight he could tell that she was not having sex very often, and that her next boyfriend would be lucky to enjoy such a tight vagina.

52.     These statements stunned C.D.  She did not respond to them.  Heaps then completed the pap smear procedure and told C.D. she could get dressed.  Heaps and the female chaperone left the exam at the same time.  Although she was asked to (and did) disrobe from the waist up, Heaps did not conduct a breast exam during the appointment.

53.     While C.D. was shocked, she assumed as before that because Heaps was a UCLA doctor and there was a female chaperone in the exam room, Heaps could not have been doing anything wrong.

54.     In June of 2018, Heaps conducted a procedure on C.D. known as LEEP, or Loop Electrosurgical Excision Procedure.  LEEP involves the use of a small electrical wire to remove abnormal cells from the cervix.

55.     After the procedure, C.D. was told that Heaps would review her lab results and that she would be contacted if any follow-up appointment was needed.

56.     A nurse called C.D. about a week after the procedure.  The nurse said that Heaps had determined that C.D. needed to undergo another LEEP, but that Heaps had retired and so she would need to find another doctor.

57.     C.D. asked the nurse why she had not been informed of Heaps's retirement before, as she had just seen him within the past couple of weeks.  The nurse responded only that the retirement was "very sudden."

58.     C.D. started seeing a female OB/GYN not affiliated with UCLA Health.

59.     C.D. asked UCLA Health multiple times for her medical records, but UCLA Health did not provide them.  After C.D.'s new doctor made the request directly to UCLA Health, it turned over C.D.'s records.

60.     C.D.'s new doctor determined that another LEEP was not necessary.

61.     C.D. feels deeply upset, demeaned, abused, and violated by Heaps.

62.     Heaps violated and injured C.D. by, among other things, (1) failing to advise and inform her of the procedures being performed, (2) touching her legs, thighs,

CLASS ACTION COMPLAINT
CASE NO.

genital area, and vagina without gloves, and placing his ungloved fingers inside her vagina, in a sexual manner, and (3) asking questions and making comments of a sexual nature without medical justification.

63.    Because Heaps was an employee of UCLA Health, C.D. reasonably believed that Heaps's conduct must have been legitimate medical treatment.

64.    In June 2019, C.D. received a letter from UCLA stating that Heaps was "charged with sexual battery and sexual exploitation in connection with his medical practice" and that the criminal charges against him were "very disturbing."

65.    After reading this letter, C.D. realized for the first time that Heaps's actions at her appointments were sexual assaults. This realization has caused her to experience severe psychological and emotional distress. She also feels betrayed by and angry at UCLA for subjecting her and other women to Heaps's egregious behavior.

### B.    UCLA Was on Notice of Heaps's Misconduct

66.    Heaps began working at UCLA Health in 1983, as an OB-GYN at UCLA's student health center. He worked part time at the student health center from 1983 to 2010. In 2014, UCLA Health hired Heaps as a full-time doctor. He has held medical privileges at the Ronald Reagan UCLA Medical Center from 1988 to 2018. UCLA Health received complaints about Heaps's misconduct no later than in early 2014, and before his assaults on both Plaintiffs.

67.    In early 2014, a breast cancer patient informed UCLA Health that she was "completely shocked and embarrassed" by Heaps's inappropriate sexual contact and comments during a medical appointment, and that she had filed a complaint with the Medical Board of California. UCLA later told this woman that it had "thoroughly reviewed and investigated" her allegations, but refused to provide further information.

68.    UCLA's decision to keep the results of its 2014 investigation secret violated its sexual misconduct policy. That policy mandates that "the complainant shall be informed if there were findings made that the Policy was or was not violated and of actions taken to resolve the complaint, if any."

CLASS ACTION COMPLAINT
CASE NO.

69.    UCLA Health never informed the university's Title IX office of the 2014 complaint against Heaps.  That office only learned of that complaint, and of another complaint from 2015 against Heaps, when investigating allegations of similar misconduct in 2017.

**C.    UCLA Did Not Respond Appropriately to Heaps's Misconduct**

70.    UCLA's failure to suspend or terminate Heaps after learning of his alleged abuse exposed numerous women, including Plaintiffs, to repeated instances of sexual abuse.

71.    UCLA's policy permitted it to remove Heaps from campus once it began investigating his conduct in 2014.  Under UCLA's Investigatory Leave Policy, employees under investigation for "sexual violence," "sexual harassment," "exploitation, intimidation," or "harassment" may be placed on "investigatory leave" when "circumstances warrant removing an employee from the work site during the course of the University's investigation of allegations against the employee."

72.    Additionally, the Clery Act, 20 U.S.C. § 1092, requires UCLA to alert students and others on campus when an individual accused of sexual assault is determined to be a threat to the community.

73.    UCLA took no action to suspend, terminate, or otherwise protect patients from Heaps until 2018.

74.    Instead of placing Heaps on leave or warning the campus community while investigating his conduct in 2014, UCLA allowed him to continue seeing patients.

75.    UCLA's failure to act in 2014 to protect patients from Heaps exposed Plaintiffs and many other women to sexual harassment and assault at his hands.

76.    In addition to investigating allegations of Heaps's misbehavior as early as 2014, UCLA has admitted that it received further complaints about Heaps in 2015 and 2017.  UCLA did not publicly acknowledge the abuse allegations against Heaps until June 2019, when he was arrested and charged with sexual misconduct.

CLASS ACTION COMPLAINT
CASE NO.

77.     Heaps reportedly earned more than $1 million each year between 2014 and 2018.

78.     In 2017, UCLA learned of additional allegations that Heaps engaged in inappropriate, medically unnecessary touching of, and made offensive comments to, female patients.  UCLA again investigated—and again allowed Heaps to continue seeing patients during its investigation.

79.     UCLA's failure to act in 2017 to protect patients from Heaps exposed many women to sexual harassment and assault at his hands.

80.     Another university investigation in early 2018 found that at least four patients had made serious allegations against Heaps.

81.     In March 2018, UCLA reached a $1.3 million settlement with one of its nurses, who alleged sexual harassment by Heaps.  At that point UCLA still had taken no action to suspend, terminate, or otherwise protect patients from Heaps, even after all the complaints about his improper conduct in the exam room.

82.     As a result of UCLA's inaction, a patient reported being assaulted by Heaps at a February 28, 2018 appointment.

83.     At no point did UCLA terminate Heaps.  In April 2018, UCLA placed him on leave and allowed him to quietly retire.

84.     Not until June 2018—when similar allegations relating to Dr. George Tyndall's abuse of women at the University of Southern California became public—did UCLA notify the Medical Board of California about Heaps's misconduct.

**D.     The Scale and Scope of Heaps's Abuse Emerges**

85.     In June 2018, UCLA notified law enforcement of Heaps's misconduct.

86.     On June 10, 2019, Heaps was arrested and charged with two counts of sexual battery by fraud and one count of sexual exploitation of a patient.

87.     That same day UCLA publicly acknowledged that it had investigated Heaps in 2018 "for sexual misconduct and improper billing practices."

CLASS ACTION COMPLAINT
CASE NO.

88.     An editorial in the *Daily Bruin*, UCLA's student newspaper, noted that the university "knew about Heaps's wrongdoings for more than a year, yet only broke its silence when he was legally charged and arrested—leaving the campus community in the dark."  Instead of removing "Heaps from campus while he was under investigation, which UC policy would have allowed," UCLA "let him continue to treat patients, who were unaware their doctor was an alleged sex offender."  UCLA thus "compromised its students' and patients' safety, leaving them vulnerable to sexual violence" through its inaction and silence "even after it had completed its investigation into Heaps and found significant violations of UC sexual misconduct policies."

89.     UCLA issued an apologetic public statement the day Heaps was arrested: "We are deeply sorry that a former member of our staff violated our policies and standards, our trust, and the trust of his patients. . . . [W]e know we can and must do better . . . ."

90.     UCLA also announced that it had hired a third-party firm, Praesidium, to talk to other Heaps patients.  As of July 1, 2019, 102 individuals had contacted UCLA to report concerns arising from their encounters with Heaps.

91.     Also in July, a public records request revealed that UCLA had agreed to a confidential $2.25 million settlement with a former Heaps patient alleging sexual abuse. The *Daily Bruin* reported that UCLA wanted to "keep things confidential" to avoid a "blow up like what happened to USC" with the Tyndall controversy.

92.     In June 2019, UCLA Health sent a form letter to Heaps's former patients, including Plaintiffs, disclosing his alleged misconduct.  The letter states in part:

> [W]e want you to be aware that Dr. James Heaps, an obstetrician-gynecologist employed at UCLA Health from February 2014 to June 2018, has been charged with sexual battery and sexual exploitation in connection with his medical practices. The criminal charges filed against Dr. Heaps are very disturbing.
>
> You are receiving this letter because our records indicate you are a patient who may have had had [sic] an appointment with

12

CLASS ACTION COMPLAINT
CASE NO.

Dr. James Heaps at UCLA Health at least once between February 2014 and June 2018.

93.     In the time since UCLA sent this letter, an additional 18 women have filed suit against Heaps, and at least 50 others have come forward with allegations of sexual misconduct and abuse during women's health appointments with Heaps.

## AGENCY, ALTER EGO, AND CONSPIRACY ALLEGATIONS

94.     At all relevant times, Heaps was an employee, agent, and/or servant of the Regents, was under their complete control and active supervision, and operated within the scope of his employment by them.

95.     Defendants engaged in, joined in, and conspired with each of the other Defendants and wrongdoers in carrying out the tortuous and unlawful activities herein described.  Each Defendant is legally responsible for the occurrences herein alleged, and Plaintiffs' damages, as herein alleged, were proximately caused by all Defendants.

96.     At all relevant times, there existed a unity of interest and ownership among Defendants such that any individuality or separateness between or among them ceased to exist.  Defendants and each of them were the alter egos of all of the other Defendants, in that they dominated and controlled each other without any separate identity, observation of formalities, or other manner of division.

97.     At all relevant times, each Defendant was the agent, representative, and/or employee of each of the other Defendants.  In engaging in the conduct herein alleged, Defendants, and each of them, were acting within the course and scope of that alternative personality, capacity, identity, agency, representation, and/or employment and were within the scope of their authority, whether actual or apparent.

98.     At all relevant times, each Defendant was the trustee, partner, servant, joint venturer, shareholder, contractor, and/or employee of each and every other Defendant, and the acts and omissions herein alleged were done by them through such capacity and within the scope of their authority, and with the permission and consent of each and

CLASS ACTION COMPLAINT
CASE NO.

every other Defendant. Such conduct was ratified by each and every other Defendant, and each of them is jointly and severally liable to Plaintiffs.

## TOLLING OF THE STATUTES OF LIMITATIONS

99. The statute of limitations for each of Plaintiffs' causes of actions was equitably tolled, and Defendants are equitably estopped from asserting the statute of limitations as a defense, by reason of their wrongful conduct.

100. The UC Regents acted wrongfully by ignoring and actively concealing myriad complaints of sexual misconduct lodged against Heaps, and breached mandatory duties owed to Plaintiffs by continuing to employ Heaps and by failing to warn Plaintiffs of his propensity to harm and molest female patients.

101. The UC Regents received complaints of Heaps's sexually abusive conduct, and knew of Heaps's dangerous propensity to sexually abuse his female patients, including vulnerable students, by 2014 at the latest. The UC Regents wrongfully concealed these complaints and suppressed its knowledge of Heaps's misconduct, including from the Medical Board of California's investigation, causing Plaintiffs and other female patients to suffer assault at the hands of Heaps, by holding him out as a trustworthy doctor and employing him as gynecologist and oncologist at university medical facilities.

102. The UC Regents benefited financially from retaining Heaps as an employee. By assigning and employing Heaps as a gynecologist and oncologist at university medical facilities, the UC Regents represented to UCLA students and patients, and to the community at large, that Heaps was a safe and trustworthy doctor such that students and patients need not worry about Heaps interacting with and providing care to them. The UC Regents did so to protect their own public image and so that they could retain past students, recruit new students, and gain and preserve sources of financial support.

103. The UC Regents also benefited financially as the intended result of their active, wrongful concealment of Heaps's sexual abuse. The UC Regents' deliberate

14

CLASS ACTION COMPLAINT
CASE NO.

concealment included allowing Heaps to quietly resign in June 2019 after an internal university investigation revealed that Heaps routinely fondled female patients' breasts and manipulated their genitalia for his own sexual gratification, made sexually offensive comments to them, and had been the subject of serious and credible complaints for many years. The UC Regents allowed Heaps to resign without disclosing these findings in a deliberate attempt to conceal from Plaintiffs and the public that Heaps was a serial sexual predator, in order to insulate itself from liability and avoid reputational damage. Similarly, the UC Regents settled multiple individual lawsuits brought by Heaps victims for the intended purpose of suppressing his misbehavior to avoid reputational and financial harm.

104. As part of Defendants' wrongful attempt to conceal Heaps's propensity to sexually abuse female patients and his past sexual abuse from public scrutiny and criminal investigation, Defendants implemented various measures with the intent and effect of making Heaps's conduct harder to detect and ensuring that other patients with whom he came into contact, including Plaintiffs, would be sexually abused and assaulted, including:

a. Permitting Heaps to remain in a position of authority and trust after Defendants knew he was assaulting his female patients;

b. Scheduling female patients for appointments with Heaps, including appointments without a nurse or chaperone present, despite knowing of his improper conduct;

c. Placing Heaps in a separate and secluded environment at the university medical center, and granting him unfettered access to and control over patients even when he was purporting to provide extremely sensitive gynecological and oncology treatment, thereby allowing Heaps to physically and sexually interact with female patients, including Plaintiffs;

d. Holding out Heaps to Plaintiffs, patients at UCLA medical facilities, UCLA students, UCLA alumni, and the public as a trustworthy person of good moral

CLASS ACTION COMPLAINT
CASE NO.

character who was capable and worthy of being granted unsupervised access to patients at UCLA health-care facilities;

e.    Failing to disclose and actively concealing Heaps's prior record of misconduct, sexual abuse, harassment, and molestation, and his propensity to commit such acts towards female patients at university medical facilities, from UCLA's students, patients at its medical facilities, the public, and law enforcement;

f.    Failing to investigate or otherwise confirm or deny such facts about Heaps, including prior complaints, claims, and investigations relating to sexual abuse suffered at his hands;

g.    Failing to implement reasonable safeguards to avoid acts of unlawful sexual conduct by Heaps, such as by avoiding placement of Heaps in functions or environments in which he would necessarily have intimate contact with female patients; and

h.    Failing to implement systems or procedures to supervise or monitor doctors, chaperones, and other UCLA agents to ensure that they did not molest or abuse patients in Defendants' care and, further, that they report all reasonable suspicions of sexual assault or battery to law enforcement as mandated by Section 11160 of the California Penal Code.

105.   By consequence of the threatening and frightening conduct of Heaps, Plaintiffs were coerced into not talking about the abusive acts they endured.  Plaintiffs came forward only once the coercive nature of his acts subsided and became apparent to them, due to UCLA's and the media's revelation of his pattern of misconduct and the subsequent police and prosecutorial action allowing such victims, including Plaintiffs, to come forward without fear of reprisal by Defendants.

106.   Defendants actively concealed numerous complaints of Heaps's sexually abusive behavior in order to deceive Plaintiffs into believing that his sexual abuse was a legitimate medical treatment.  Heaps's conduct in relation to Plaintiffs was intended to, and did, shame, humiliate, and embarrass Plaintiffs to their substantial psychological and

CLASS ACTION COMPLAINT
CASE NO.

emotional detriment, coercing them from disclosing the abuse to UCLA.  By his conduct and statements, Heaps falsely represented to Plaintiffs that his acts were for the proper purpose of conducting a vaginal examination, ultrasound, pap smear, and/or breast exam and that his acts conformed to accepted medical practice.  In reliance upon these representations and the fact that Heaps was a UCLA-employed doctor, Plaintiffs at all times trusted that Heaps had provided them with legitimate medical treatment.

107.   Neither Plaintiff has ever been a medical professional or had any specialized medical training, and hence they did not discover and could not have reasonably discovered their abuse at an earlier date than they did.  Plaintiffs were led to believe that Heaps's sexual abuse was not, in fact, sexual abuse, but rather was legitimate gynecological treatment because Heaps was employed at UCLA medical facilities.

108.   Only in June 2019, after Heaps was arrested and charged with criminal violations, and when his rampant sexual mistreatment of female patients, including young female UCLA students, was nationally publicized in the media, did Plaintiffs come to learn that Heaps's treatment of them was not a legitimate medical treatment, but was instead sexual assault committed for his own gratification.

109.   Prior to the recent revelation of Heaps's conduct, Plaintiffs did not discover, and could not have reasonably discovered, UCLA's notice and wrongful concealment of Heaps's pattern of abusive conduct.

110.   Plaintiffs were ignorant of the true facts related to their abuse until it was revealed in June 2019.  Not until June 2019, when the allegations of Heaps was arrested and charged, and when his sexual misconduct received national media attention and became public knowledge, did Plaintiffs know or have any reason to know of their claims against Defendants.  Not until then could Plaintiffs have reasonably discovered that UCLA had notice of Heaps's misconduct but failed to stop it.  Plaintiffs' claims therefore accrued in June 2019.

CLASS ACTION COMPLAINT
CASE NO.

## CLASS ACTION ALLEGATIONS

111.   Plaintiffs bring this action under Federal Rule of Civil Procedure 23 on behalf of a class of women who were examined by James Heaps, M.D. at UCLA facilities after January 1, 2014.  Excluded from this class are counsel for Plaintiffs and their employees and immediate family members, and all judges assigned to this case and their staffs and immediate family members.  Plaintiffs reserve the right to amend the class definition, including by expanding the class period, based on further investigation and discovery.

112.   The requirements of Federal Rule of Civil Procedure 23(a), (b)(3), and/or (c)(4) are satisfied in this case.

113.   <u>Numerosity</u> (Fed. R. Civ. P. 23(a)(1)).  Joinder of the class members in a single litigation is not practicable.  There are at least hundreds of individuals in the class.  Their identities can be readily determined from records in the UC Regents' possession.

114.   <u>Commonality and Predominance</u> (Fed. R. Civ. P. 23(a)(2), (b)(3)).  Questions of law and fact common to class members predominate over any questions that may affect only individual class members.  Questions of law and fact common to the class include, without limitation:

a.   Whether Heaps committed sexual assault and battery;

b.   Whether Heaps violated the law during and within the scope of his employment at UCLA;

c.   Whether the UC Regents knew or reasonably should have known of Heaps's misconduct;

d.   Whether the UC Regents' actions and inaction in response to such knowledge were reasonably tailored to prevent foreseeable harm;

e.   Whether the UC Regents acted negligently, including with respect to training and supervising Heaps and preventing future injuries committed by him;

f.   Whether the UC Regents are legally responsible for Heaps's conduct under principles of respondeat superior; and

18

CLASS ACTION COMPLAINT
CASE NO.

g.     Whether Defendants acted to suppress, minimize, and deter complaints about Heaps's predatory behavior.

115.   <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)).  Plaintiffs' claims are typical of the claims of the class.  The same legal doctrines and the same pattern and practice of sexual assault, battery, and harassment give rise to the claims of all class members.  All class members were unlawfully exposed to the same environment.

116.   <u>Adequacy of representation</u> (Fed. R. Civ. P. 23(a)(4)).  Plaintiffs will fairly and adequately protect the interests of the class.  Plaintiffs have no interests antagonistic to the interests of other class members and are committed to vigorously prosecuting this action on their behalf.  Plaintiffs have retained counsel experienced in prosecuting class actions, including sexual assault class actions under California law.

117.   <u>Superiority</u> (Fed. R. Civ. P. 23(b)(3)).  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Because the amount of each individual class member's claim is small relative to the complexity of the litigation, and because of the UC Regents' financial resources, many class members are unlikely to pursue legal redress individually for the violations detailed in this complaint.  Classwide adjudication of common questions, such as the UC Regents' legal responsibility for Heaps's conduct, is superior to multiple individual actions and will conserve judicial and party resources while promoting consistency of adjudication.

118.   <u>Common issues</u> (Fed. R. Civ. P. 23(c)(4)).  Plaintiffs' claims, and the claims of all class members, are comprised of common issues that may be efficiently adjudicated in a single proceeding.

**FIRST CAUSE OF ACTION**
**Violations of Title IX**
**20 U.S.C. § 1681(a), *et seq.***
**(Against the UC Regents)**

119.   Plaintiffs incorporate the above allegations by reference.

CLASS ACTION COMPLAINT
CASE NO.

120.   Under Title IX of the Education Amendments Act of 1972, "No person in the United States shall on the basis of sex, be . . . subject to discrimination under any education program or activity receiving Federal financial assistance . . . ."

121.   Plaintiffs are "persons" under Title IX.

122.   Plaintiffs were subjected to sexual abuse, harassment, and discrimination by Heaps's intentional conduct.

123.   The UC Regents receive federal financial assistance for educational activities relating to the practice of medicine at UCLA.  The conduct of those activities is therefore subject to Title IX.

124.   Title IX requires the UC Regents to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

125.   Heaps's conduct constitutes sexual harassment, abuse, and assault, and sex discrimination, in violation of Title IX.

126.   The UC Regents were on notice of Heaps's conduct alleged herein and had authority to institute corrective measures, but failed to investigate that conduct and take corrective action as required by Title IX.

127.   The UC Regents were deliberately indifferent to a substantial risk of sexual abuse to its students in that the UC Regents had actual knowledge of Heaps's misconduct, and responded unreasonably in failing to terminate his employment, publicize his misconduct, and remove him from a situation in which he could and would continue abusing patients, including Plaintiffs, at federally funded UCLA facilities.

128.   The UC Regents' failure to investigate Heaps's conduct and take corrective action, as required by Title IX, was a substantial factor in causing damage to Plaintiffs. As a direct and proximate result of the UC Regents' violations of Title IX, Plaintiffs suffered harm, including shock, fright, distress, grief, and anguish, in an amount to be determined at trial.

CLASS ACTION COMPLAINT
CASE NO.

## SECOND CAUSE OF ACTION
### Violations of the Unruh Act
### Cal. Civ. Code § 51
### (Against the UC Regents)

129.   Plaintiffs incorporate the above allegations by reference.

130.   Plaintiffs had the rights to be free from gender discrimination, sexual molestation, abuse, and harassment under the Unruh Act.  The UC Regents violated these civil rights of Plaintiffs when they intentionally concealed from Plaintiffs complaints of sexual abuse, molestation, and harassment by Heaps and his investigation by the Medical Board of California.

131.   Defendants were acting under the color of their authority and in the scope of their employment, during the subject incidents, during which Plaintiffs were patients at UCLA medical facilities under the UC Regents' supervision and control.

132.   The UC Regents denied Plaintiffs full and equal accommodations, advantages, facilities, privileges and health-care services because of their gender, by allowing Heaps unfettered access to sexually abuse Plaintiffs, through his position of authority as a gynecologist specializing in oncology at UCLA, and by actively concealing from Plaintiffs that Heaps was engaged in serial sexual predation.

133.   By employing and retaining Heaps as a gynecologist specializing in oncology, despite knowing of numerous reports of Heaps's sexually abusive conduct, and of the existence of an official medical board probe into that conduct, the UC Regents permitted and induced female patients to seek necessary medical treatment from Heaps, thereby exposing Plaintiffs to sexual abuse at his hands.  The UC Regents' retention of and failure to discipline Heaps denied Plaintiffs full and equal access to safe medical facilities, treatment, and services, on the basis of their gender.

134.   The substantial motivating reason for the UC Regents' active concealment of numerous complaints of Heaps's sexually abusive conduct was Plaintiffs' gender. The UC Regents knew that only female patients would seek gynecological and oncology treatment from Heaps and, thus, that only they would be subjected to his sexual assaults.

CLASS ACTION COMPLAINT
CASE NO.

135.   As a direct and proximate result of the UC Regents' violations of the Unruh Act, Plaintiffs suffered harm, including shock, fright, distress, grief, and anguish, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**Gender Violence**
**Civil Code § 52.4**
**(Against Heaps)**

136.   Plaintiffs incorporate the above allegations by reference.

137.   Heaps's acts committed against Plaintiffs, including his sexual harassment, molestation, and abuse of them, constitute gender violence and sex discrimination.

138.   One or more of Heaps's acts would constitute a criminal offense under California law that has as an element the use, attempted use, or threatened use of physical force against the person of another, committed in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.  Heaps's conduct caused a physical intrusion and invasion of a sexual nature to Plaintiffs under coercive conditions, whether or not such conduct has resulted in criminal complaints, charges, prosecution, or conviction.

139.   As a direct and proximate result of Heaps's violations of Civil Code Section 52.4, Plaintiffs suffered harm, including shock, fright, distress, grief, and anguish, in an amount to be determined at trial.

140.   Heaps's acts of gender violence against Plaintiffs entitle them to actual damages, compensatory damages, punitive damages, and an award of reasonable attorney's fees and costs under Section 52.4 of the California Civil Code.

### FOURTH CAUSE OF ACTION
**Sexual Assault**
**(Against Heaps)**

141.   Plaintiffs incorporate the above allegations by reference.

CLASS ACTION COMPLAINT
CASE NO.

142.   Heaps, in subjecting Plaintiffs to sexual abuse and molestation, during the course and scope of his employment by the UC Regents, intended to and did cause a harmful and sexually offensive contact with their person and place them in imminent apprehension of such contact.

143.   During the aforementioned incidents, Plaintiffs suffered a harmful and offensive contact from Heaps, were placed in imminent apprehension of a harmful and sexually offensive contact by him, and believed that he had the ability to make a harmful and offensive contact with their person.

144.   At no point did either Plaintiff consent to Heaps's harmful or sexually offensive contact with her person, or to being placed by him in imminent apprehension of such contact.  Due to Heaps's age and position of authority, each Plaintiff's physical seclusion, and her mental and emotional state, Plaintiffs were unable to, did not, and could not consent to Heaps's acts.

145.   In doing the things herein alleged, Heaps violated Plaintiffs' right, under Section 43 of the California Criminal Code, of protection from bodily restraint or harm and from personal insult.  In doing the things herein alleged, Heaps violated his duty, under Section 1708 of the California Civil Code, to refrain from injuring the person of Plaintiffs and infringing their rights.

146.   As a direct and proximate result of Heaps's sexual assaults, Plaintiffs suffered harm, including shock, fright, distress, grief, and anguish, in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Sexual Battery**
**Cal. Civ. Code § 1708.5**
**(Against Heaps)**

147.   Plaintiffs incorporate the above allegations by reference.

148.   During the course and scope of his employment with the UC Regents, Heaps intentionally, recklessly and wantonly committed acts which were intended to,

CLASS ACTION COMPLAINT
CASE NO.

and did, result in harmful and sexually offensive contact with intimate parts of Plaintiffs' person.

149.   Heaps committed the aforementioned acts with the intent to cause a harmful or sexually offensive contact with intimate parts of Plaintiffs' person.  These acts would offend a reasonable sense of personal dignity.

150.   At no point did either Plaintiff consent to Heaps's acts.  Due to Heaps's age and position of authority, each Plaintiff's physical seclusion, and her mental and emotional state, Plaintiffs were unable to, did not, and could not consent to Heaps's acts.

151.   As a direct and proximate result of Heaps's sexual batteries, Plaintiffs suffered harm, including shock, fright, distress, grief, and anguish, in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
**Sexual Harassment**
**Cal. Civ. Code § 51.9**
**(Against the UC Regents)**

152.   Plaintiffs incorporate the above allegations by reference.

153.   Heaps intentionally, recklessly and wantonly made sexual advances and demands for sexual compliance of a hostile nature toward Plaintiffs, based on their gender, that were unwelcome, pervasive, and severe, including groping and fondling A.B.'s breasts, and remarking on how "tight" C.D. was, under the supervision of the UC Regents, who were acting in the course and scope of their agency with Defendants and each of them.

154.   The incidents of abuse described herein occurred while Plaintiffs were under the control of Heaps and of the UC Regents in their capacity and position as supervisors of doctors, medical professionals, and staff at UCLA health-care facilities, and while acting specifically on behalf of Defendants.

155.   Heaps intentionally, recklessly, and wantonly committed acts which resulted in harmful and offensive contact with intimate parts of each Plaintiff's person,

---

24

CLASS ACTION COMPLAINT
CASE NO.

including using his age and position of authority to force each Plaintiff to submit to Heaps's sexual assault and battery.

156.   Because of Heaps's age and position of authority, each Plaintiff's physical seclusion, and her mental and emotional state, Plaintiffs were unable to, did not, and could not terminate the encounter or give consent to Heaps's acts.

157.   The UC Regents knew or should have known of these activities by Heaps prior to Plaintiffs' appointments with him.  The UC Regents failed to investigate, supervise, or monitor Heaps to ensure Plaintiffs' safety while they were in their charge.

158.   The UC Regents' conduct, and that of their agent Heaps, constitutes a breach of their duties to Plaintiffs under Section 51.9 of the California Civil Code.

159.   As a direct and proximate result of the UC Regents' sexual harassment, Plaintiffs suffered harm, including shock, fright, distress, grief, and anguish.

160.   Plaintiffs are entitled to damages as provided by Section 52(b) of the California Civil Code.

**SEVENTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

161.   Plaintiffs incorporate the above allegations by reference.

162.   Defendants' conduct toward Plaintiffs, as described herein, was outrageous and extreme.

163.   A reasonable person would not expect or tolerate the sexual harassment, molestation, and abuse of Plaintiffs by Heaps or the UC Regents' knowledge and callous indifference thereof.  Plaintiffs had great trust, faith, and confidence in Defendants, which, by reason of their wrongful conduct, turned to fear.

164.   A reasonable person would not expect or tolerate the UC Regents' retaining of Heaps in a position of care with respect to Plaintiffs and other patients.  At the time of the subject incidents, the UC Regents knew that Heaps had physically and sexually abused numerous female patients, including vulnerable college students.  The UC

CLASS ACTION COMPLAINT
CASE NO.

Regents' condoning of Heaps's misbehavior enabled him to have access to Plaintiffs and other patients, and resulted in his commission of wrongful sexual acts, including the conduct described herein, against female patients, including Plaintiffs.

165.   A reasonable person would not expect or tolerate the UC Regents and their agents to be unable to stop agents of the UC Regents, including Heaps, from committing wrongful sexual acts with patients, including Plaintiffs, or to properly supervise, restrain, and discipline Heaps.

166.   Heaps's conduct described herein was intentional, malicious, and done for the purpose of causing, and with the substantial certainty that Plaintiffs would suffer, humiliation, mental anguish, and emotional and physical distress.

167.   The UC Regents acted with reckless disregard of the probability that Plaintiffs would suffer emotional distress, knowing that Plaintiffs were patients at UCLA facilities at the time Heaps's pattern of wrongful and abusive conduct was ongoing.

168.   As a direct and proximate result of Defendants' intentional conduct set forth herein, Plaintiffs suffered severe emotional distress and are accordingly entitled to appropriate damages.  That many class members confronted actual or potential cancer diagnoses further magnified their suffering and stress resulting from his abhorrent behavior.

169.   A reasonable person in Plaintiffs' situation would be unable to adequately cope with the mental stress engendered by Heaps's abusive treatment of her. Defendants' conduct was a substantial factor in causing Plaintiffs to experience suffering at a level no reasonable person should have to endure.

## EIGHTH CAUSE OF ACTION
### Negligence and/or Gross Negligence
### (Against the UC Regents)

170.   Plaintiffs incorporate the above allegations by reference.

CLASS ACTION COMPLAINT
CASE NO.

171.    Prior to Heaps's sexual molestation and harassment of Plaintiffs, the UC Regents knew or reasonably should have known of Heaps's propensity to molest and harass female patients during sensitive gynecological and oncology examinations.

172.    Prior to Heaps's sexual molestation and harassment of Plaintiffs, Heaps failed to follow protocol, including by groping female patients' breasts and manipulating their genitalia in an apparent effort to sexually stimulate them, for his own sexual gratification.

173.    Prior to Heaps's sexual molestation and harassment of Plaintiffs, the UC Regents received a substantial volume of complaints from patients, nurses, and/or chaperones regarding Heaps's inappropriate behavior.

174.    Prior to Heaps's sexual molestation and harassment of Plaintiffs, the UC Regents learned that the Medical Board of California had opened an investigation into Heaps's conduct as a physician.

175.    Plaintiffs' care, welfare, and physical custody were entrusted to the UC Regents, and they voluntarily accepted the accompanying obligations.  The UC Regents owed Plaintiffs a special duty of care, particularly in the vulnerable context of a gynecological examination.  The UC Regents' duty to protect and warn arose from the special, confidential, and fiduciary relationship between Defendants and Plaintiffs.

176.    The UC Regents breached their duties of care to each Plaintiff by, among other things:

        a.    allowing Heaps to come into contact with her;

        b.    allowing Heaps to come into contact with her without effective supervision;

        c.    failing to prevent Heaps from committing wrongful sexual acts with medical patients, including Plaintiffs;

        d.    failing to appropriately train Heaps;

        e.    failing to appropriately monitor and supervise Heaps;

f.      continuing to employ Heaps after reports of his improper conduct emerged and after the Medical Board of California began investigating his conduct as a physician;

g.      failing to sufficiently investigate pervasive reports of sexual abuse by Heaps;

h.      failing to take necessary preventive and remedial actions in response to numerous complaints regarding Heaps;

i.      failing to implement systems or procedures reasonably geared to ensure female patients would not be abused at UCLA medical facilities;

j.       failing to disclose Heaps's propensity for sexual violation to Plaintiffs, the public, and law enforcement, or otherwise warn Plaintiffs and other potential victims of the significant risk of harm arising from that propensity;

k.      allowing Heaps to continue in a position of trust and authority, in which he could, and foreseeably would, do great damage to women, including vulnerable college students, even after being alerted as to his past wrongdoing;

l.      actively concealing from Plaintiffs, the public, and law enforcement that Heaps was sexually harassing and molesting patients; and

m.      holding Heaps out to Plaintiffs as being trustworthy and of good character.

177.   The UC Regents' breaches of their duties of care to Plaintiffs foreseeably harmed them and constitute gross negligence.

178.   The UC Regents' acts and omissions constitute an extreme departure from what reasonably careful university leaders would do in the same situation to prevent molestation and harassment of female patients under their care at university facilities. The UC Regents acted willfully, wantonly, and with conscious and reckless disregard for the rights and interests of Plaintiffs.  Their acts and omissions had a great probability of causing considerable harm and in fact did.

179.   As a direct and proximate result of the UC Regents' negligence set forth herein, Plaintiffs suffered severe emotional distress and are accordingly entitled to appropriate damages.  That many class members confronted actual or potential cancer diagnoses further magnified their suffering and stress resulting from the UC Regents' failure to prevent Heaps's foreseeable misconduct.

180.   A reasonable person in Plaintiffs' situation would be unable to adequately cope with the mental stress engendered by Heaps's abusive treatment of them, which was made possible by the UC Regents' negligence.  The UC Regents' negligence was a substantial factor in causing Plaintiffs to experience suffering at a level no reasonable person should have to endure.

181.   As a direct and proximate result of the UC Regents' negligence and gross negligence, Plaintiffs are entitled to damages, including punitive damages, in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### Ratification
### (Against the UC Regents)

182.   Plaintiffs incorporate the above allegations by reference.

183.   Heaps was an agent and employee of the UC Regents between 1983 and 2018, during which time he continuously practiced medicine at UCLA facilities.

184.   At all relevant times, Heaps was acting, or purporting to act, as an agent of and on behalf of UCLA.

185.   During instances of Heaps's abuse of his patients, including of Plaintiffs, Heaps purported to act on behalf of the UC Regents.

186.   The UC Regents learned of Heaps's pattern of unauthorized, improper actions and learned of the material facts associated with the relevant incidents at or close to the time they occurred.

187.   The UC Regents ratified all acts and omissions described herein.  Many UCLA administrators and employees, including nurses and chaperones, knew that Heaps

CLASS ACTION COMPLAINT
CASE NO.

was molesting female patients and students under UCLA's and the UC Regents' care. They failed to take appropriate actions to stop him. They actively concealed his transgressions. The inaction of the UC Regents enabled the sexual abuse and assault of Plaintiffs and hundreds of women like them.

188. In failing to take corrective action to prevent further misconduct by Heaps, the UC Regents voluntarily retained pecuniary benefits accruing from Heaps's misconduct after they learned of it.

189. Imputing liability to the UC Regents advances the purposes of respondeat superior. It would be unjust for the UC Regents to disclaim responsibility for injuries occurring during the course of Heaps's activities as a women's health doctor at UCLA's medical facilities. Imputing liability to the UC Regents will prevent future harm and assure compensation to the victims.

190. The UC Regents bear legal responsibility for Heaps's wrongful acts. Plaintiffs are entitled to damages from the UC Regents in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the class, respectfully request that this Court:

A. Certify the class under Federal Rule of Civil Procedure 23, appoint Plaintiffs as class representatives, and appoint their attorneys as class counsel;

B. Enter judgment against Defendants and in favor of Plaintiffs and the class;

C. Award appropriate compensatory and punitive damages to Plaintiffs and the class;

D. Award reasonable attorneys' fees and costs.

## DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues so triable.

CLASS ACTION COMPLAINT
CASE NO.

Dated: July 30, 2019

Respectfully submitted,

By:      /s/  *Elizabeth A. Kramer*

Daniel C. Girard (State Bar No. 114826)
Elizabeth A. Kramer (State Bar No. 293129)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
(415) 981-4800

Eric H. Gibbs (State Bar No. 178658)
Amy M. Zeman (State Bar No. 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
(510) 350-9700

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT
CASE NO.